CASANUEVA, Judge,
Dissenting.
Because I conclude that the' mother presented competent, substantial evidence that her child’s name change is in the child’s best interest and the trial court did not abuse its discretion in rélying' upon that evidence, I would'affirm the final judgment of change of name. Accordingly, I dissent.
Here, the mother sought to change the last name of the minor child to the mother’s restored maiden name, Conklin. The mother asserted that it was in the child’s best interest to bear the same last name as the mother, who had raised the child on her own essentially since birth, rather than retaining the name of the absentee father. In support of this assertion, the mother testified that she is and always has been the child’s sole caregiver, the father has no involvement in. the child’s life, and everyone in the child’s family unit bears the last name Conklin.
The record ’reflects, at best, a minimal involvement by the father in the daughter’s life since her birth. His initial lack of involvement could be attributed to .his addiction problem and his efforts to confront the problem. The cause of subsequent disinterest is not readily identified, and the trial court was well within its authority to consider and weigh the evidence presented. The record reflects such evaluation.
Regarding the father’s involvement in the child’s life following the parties’ separation, the mother testified that the father completed rehab for substance abuse and then left town without informing the mother. He later moved out of state, again without informing the mother. The last time the child saw her father was nineteen *346 months prior to the hearing, when the child was two years old. The mother testified that the father does not correspond with the child, has never called her on her birthday or Christmas, and has never been to the child’s preschool or attended her dance classes.
The mother stated that the. daughter has no recollection of having a father and identifies with the mother as her family unit. In explaining why the change of name would be in her daughter’s best interest, the mother stated that bearing the mother’s last name would give the child a greater sense of stability and avoid feelings of embarrassment or abandonment for bearing the last name of the father, who has no meaningful presence in her life.
During his testimony, when asked to identify the parenting tasks he has per; formed since the divorce, the father responded by stating that he had paid a bill forwarded to him by the mother. Further, he acknowledged that he has had no influence in the life of his daughter. In describing the extent of his efforts to become involved in his child’s life over the preceding two years, he responded that he had requested to see his daughter five times over the course of a week while he was in town.
The father does not provide the child with financial support. By agreement, his parents provide that financial assistance.
Unlike Wilson and Hutcheson, cited by the majority, it cannot be said that there is an absence of testimony in this’ case regarding why the name change is in the best interest of the child. Further, this case is easily distinguishable from Cham-berlin and Hutcheson, wherein the petitions for ñame change were filed by fathers upon an establishment of paternity. In each case, the father alleged that the child’s surname should be changed because the child, then only an infant, may someday experience negative feelings if the surname is not changed to that of the father. Chamberlin, 47 So.3d at 382; Hutcheson, 43 So.3d at 922-23.
By contrast, the child in this case is approaching school age, and the mother testified to the child’s lack of connection with the father. Furthermore, the mother, is intimately involved in the day-to-day life of the child and, pursuant to the MSA, was entrusted by the parties with full parental responsibility. Under these circumstances, and in light of the detailed testimony provided by the mother, I would conclude that ⅛ is neither speculative nor conclusory for the mother to assert that the name change will result in greater stability for the child and avoid feelings of embarrassment and abandonment.
The majority asserts that the mother’s petition for .name change “seems based solely on her wish to distance the child from the father and. for the mother’s own convenience.” While there may be an interpretation of the evidence that would support such a conclusion, clearly the trial court did not adopt such an interpretation. As the majority correctly notes, the trial court conducted a full evidentiary hearing, and it is the province of the trial court to assess the credibility of each witness and resolve conflicts in the evidence. See Siewert v. Casey, 80 So.3d 1114, 1116 (Fla. 4th DCA 2012). Further, we are bound to interpret the evidence and all reasonable inferences therefrom in the light most favorable to the trial court’s conclusion. See Smith Barney Inc. v. Potter, 725 So.2d 1223, 1224-25 (Fla. 4th DCA 1999).
Here, the mother testified that she did not object to the child spending time with the father, but the father had made nó real effort to have a relationship with the child. The MSA provided the father with supervised visitation until the father completed *347 drug rehab and met certain conditions of sobriety. The mother testified that at the time of the MSA, she did not anticipate that the father would have such minimal contact with the child, seeing her only two or three times over a two-year period. While he alleged at tidal that his lack of involvement in the child’s life was due to the mother’s interference, the mother presented testimony to the contrary. The father never complained about or sought additional parenting time until after the initial hearing on the name-change petition. The trial court could well conclude on this record that the father was more concerned about maintaining the child’s surname than maintaining a relationship with the child. Again, it is the province of the trial court to resolve conflicts in evidence, and it found the mother to be credible.
The mother testified that the father has no meaningful involvement in the child’s life; that the child identifies only with the mother, her sole caregiver; and that the name change would provide the child greater stability and avoid feelings of embarrassment and abandonment. I find that these are valid considerations for determining whether the name change is in the best interest of the child. See Coolidge, 733 So.2d at 1093-94 (considering the level of continued parental involvement and relationship with the child); Collinsworth, 508 So.2d at 747 (stating that the standard for changing the name of a minor child, “emphasizing best interests of the child rather than parents, would accord effect to the same factors governing custody”). Finally, I would note that nothing in the trial court’s judgment reduces or alters the father’s visitation rights.
When measuring the facts against the abuse of discretion standard of review, I conclude that the trial court did not err in granting the name change because it is in the child’s best interest. Accordingly, I would affirm the final judgment..